OPINION
Appellants Tiffanie Heckman and John Ray separately appeal the October 29, 1997 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, awarding permanent custody of their minor children to appellee Stark County Department of Human Services.
 STATEMENT OF THE FACTS AND CASE
Appellant Tiffanie Heckman [hereinafter "Mother"] is the natural mother of Mercedes Heckman (DOB 8/16/89), Anthony Heckman (DOB 11/15/91), Xavier Heckman (DOB 6/24/93), and Mariah Ray (DOB 11/29/94). Appellant John Ray [hereinafter "Father"] is the natural father of Mariah Ray.
On July 11, 1994, Mother called SCDHS requesting her children be placed in foster care because she had been evicted and had no money remaining from her ADC check. Mother had a history of unstable housing and budgeting problems. The children were placed in the temporary custody of the Stark County Department of Human Services [hereinafter "SCDHS"]. On July, 12, 1994, SCDHS filed a complaint against Mother[1] alleging Mercedes, Anthony, and Xavier were dependant and/or neglected children. On August 9, 1994, Mother stipulated to a finding of dependancy. A case plan was adopted for Mother, which included attending Goodwill Parenting classes, obtaining independent housing, obtaining her GED, and refraining from contact with drug activity.
On July 30, 1995, SCDHS filed a complaint alleging Mariah Ray was a dependant child. The complaint alleged Father was physically abusive to Mother and Mariah. Father was incarcerated on domestic violence charges arising from a incident involving Mother and Mariah. As a result of this abuse, Mother took Mariah to a domestic violence shelter. Shelter personnel expressed concerns about Mother's mental health and parenting abilities. Mother refused to cooperate with mental health services. At the adjudicatory hearing on July 27, 1995, Mother stipulated to a finding Mariah was a dependant child. Father's adjudicatory hearing was continued until September 7, 1995, due to Father's incarceration. At his adjudicatory hearing, Father also stipulated Mariah was a dependent child.
At the dispositional hearing on September 26, 1995, the trial court granted temporary custody of Mariah to SCDHS. A case plan was adopted. Pursuant to the case plan, Father was required to attend parenting classes, domestic violence counseling, and Quest for substance abuse treatment. Mother's case plan was a modification of the case plan put into effect on the Complaint involving the other children.
On May 7, 1996, SCDHS filed motions for permanent custody in both cases. The trial court conducted hearings on the motions on March 17, 1997, March 20, 1997, and June 23, 1997.
At the permanent custody hearings, Susan Tennill of Goodwill Parenting testified Mother had attended two sessions of parenting classes, once in 1994 and once in 1996. Although Tennill noted some improvement in Mother's coping skills, she stated Mother presented the same concerns during both sessions. In Tennill's opinion, Mother had improved to her fullest potential. Tennill expressed concerns Mother could not care for all the children without considerable support, including on going counseling and assistance in obtaining appropriate housing.
Lynda Temsic, a Goodwill Parenting instructor, testified Father completed the parenting classes, but did not show an understanding of age-appropriate behavioral expectations for Mariah. Temsic noted the agency's concerns over Father's demeaning attitude toward women, his lack of insight as to domestic violence, and his lack of understanding of his parental duties and responsibilities.
Pat Johnson, the SCDHS case worker for the family from July, 1994, until February, 1995, and from May, 1996, through the close of the case, testified Mother did not visit the children as often as the case plan permitted. Johnson recalled the one overnight visit Mother had with the children was terminated early at Mother's request. Mother admitted to Johnson she was unable to handle the children. During regular visitation, Johnson noticed Mother became overwhelmed by the children. Although Mother had shown some improvement in her ability to handle the children, she did not possess the ability to parent more than one child at a time. Johnson noted, although Mother was trying to improve and had addressed most of the objectives in her case plan, Mother did not recognize her problems and weaknesses.
Regarding Father, Johnson testified Father had established paternity. She noted Father had not visited Mariah since February, 1997, and had not contacted the case worker since that time for visitation. Johnson stated Father admitted to her he had an alcohol problem.
Dena Hargrove, Director of Renew, testified Mother contacted the agency in March, 1996, and attended two sessions. However, Mother failed to appear at any subsequent sessions and her case was closed by the agency. In October, 1996, Mother again contacted Renew. At the time of hearing, Mother had maintained regular attendance in group sessions and individual counseling. Hargrove noted Mother was growing in her knowledge of her problems, but still needed to learn to integrate and improve the skills she was learning.
Mother stated from July, 1994, until the present, she had lived in eleven different places, currently residing in a two bedroom apartment with her fifth child, who was born during the pendency of this matter. In 2 ~ years, the longest Mother had been employed was approximately six months at a Burger King Restaurant. During the six months prior to the permanent custody hearings, Mother had submitted only one employment application. Mother admitted to not following through with her mental health counseling. At the time of the hearing, she had not obtained her GED. Mother also admitted she had considered reunifying with Father during the pendency of the case despite his physical abuse.
With respect to his own case plan, Father testified he attended Goodwill Parenting classes. He stated he attended anger management counseling, but conceded he did not complete the program. Father also did not complete any other counseling program for domestic violence and anger management. Father did complete the program at Quest. Father acknowledged he had been incarcerated three times on domestic violence charges. After hearing all the evidence, the trial court granted permanent custody of the children to SCDHS. This determination was memorialized in a Judgment Entry dated September 3, 1997. Subsequently, on September 8, 1997, the trial court issued a NuncPro Tunc Judgment Entry.
The trial court conducted a best interests hearing on September 18, 1997, and October 14, 1997.
At the best interests hearing, Pat Johnson testified all four children were biracial, and only one of the children, Anthony, exhibited developmental delays. Johnson explained, when Anthony entered foster care, he had severe delays, however, his behavior had improved and he was almost developmentally on target. Johnson noted Mother did not fully and consistently exercise her visitation rights with the children. Johnson reiterated her concerns regarding Mother's inability to care for all of the children together. The children did not seek Mother for nurturance, but opted for the nearest adult figure. At the end of the visits, the children willingly left without visible signs of unhappiness.
Via Judgment Entry dated October 29, 1997, the trial court found it was in the best interests of the children to award permanent custody to SCDHS.
It is from this judgment entry Mother prosecutes this appeal, raising the following assignments of error:
 I. THE JUDGMENT OF THE TRIAL COURT GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Father appeals from the same, raising as his sole assignment or error:
 THE JUDGMENT OF THE TRIAL COURT IN GRANTING PERMANENT CUSTODY OF MARIAH RAY TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 MOTHER I II
In her assignments of error, Mother raises manifest weight and sufficiency of the evidence claims relative to the trial court's granting permanent custody to SCDHS and finding it was in the children's best interests to do so.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
The statute relevant to our review of the trial court's decision is R.C. 2151.414, which provides, in pertinent part:
 (B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
* * *
In determining the best interest of a child, R.C. 2151.414(D) states:
 (D) . . . the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
We find the trial court's finding it was in the Heckman children's and Mariah Ray's best interests to grant SCDHS' motions for permanent custody is not against weight of the evidence. Pat Johnson testified, of the children, only Anthony had developmental delays, but his problems had improved significantly since his placement in foster care. Johnson stated her belief the children were adoptable. The record further reflects the mother-child bond between Mother and all of the children was not significant, the children happily and willingly leaving visits with Mother.
However, a best interest determination is not sufficient to award permanent custody of a child to an agency and divest parents of their parental rights. In the instant case, the trial court further found, pursuant to R.C. 2151.414(B)(1), the children were not abandoned or orphaned and could not be placed with Mother within a reasonable time or should not be placed with Mother. The record reveals despite the fact Mother participated in numerous services and complied with a significant amount of her case plan, she failed to substantially remedy the problems causing the children to be removed from her home. As such, permanent custody was a proper disposition. See, In re: Rachael Dettweiler (Nov. 1, 1993), Stark App. No. CA-9244, unreported.
Based upon the foregoing, we find the trial court's finding it was in the Heckman children's and Mariah Ray's best interests to be placed in the permanent custody of SCDHS is not against the manifest weight of the evidence.
Mother's first and second assignments of error are overruled.
 FATHER
In his sole assignment of error, Father contends the trial court's granting permanent custody of Mariah Ray to SCDHS was against the manifest weight of the evidence.
As stated supra, our role is to determine whether there is relevant, competent and credible evidence upon which the trial court could base its judgment.
Lynda Tesmic, the Goodwill Parenting instructor, testified Father did not complete his domestic violence counseling as required by his case plan. She noted Father did not have sufficient parenting abilities to care for Mariah. The record further reflects Father did not complete a number of the programs required by his case plan. Father either made no contact with the specific agency or failed to complete a program once he started. Pat Johnson testified Father had not visited Mariah since February 14, 1997. Father admitted his alcohol problem to Johnson. Father himself testified he had difficulty in retaining permanent employment.
Based upon the foregoing, we find the trial court's finding Mariah could not be placed with Father within a reasonable time or should not be placed with Father is not against the manifest weight of the evidence. Accordingly, we find the trial court properly awarded permanent custody of Mariah to SCDHS.
Father's sole assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Hoffman, P.J., Reader, J. and Wise, J. concur.
[1] The putative fathers of Mercedes, Anthony and Xavier were also named in the Complaint, however, none of the fathers are parties to the instant appeal.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed. Costs assessed to appellants.